UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MATTHEW SCHINDEWOLF and
MARY SCHINDEWOLF,                                  Case No. 14-12161

        Plaintiffs,                          Honorable Nancy G. Edmunds

v.

CITY OF BRIGHTON, et al,

        Defendants.

_____/

**OPINION AND ORDER DENYING PLAINTIFFS' SEALED MOTION FOR
PARTIAL SUMMARY JUDGMENT [52]**

This employment dispute comes before the Court on Plaintiffs Matthew and Mary Schindewolf's motion for partial summary judgment [52]. Plaintiff  Matthew Schindewolf's claims arise from his separation from the City of Brighton on July 23, 2013. (Compl. ¶ 64.) Plaintiffs bring claims pursuant to the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, *et seq.*, the Family and Medical Leave Act (FMLA) 29 U.S.C. §2601, *et seq.*, the State of Michigan's Persons With Disabilities Civil Rights Act (PWDCRA), Mich. Comp. L. § 37.1101, *et seq.*, and a derivative suit for loss of consortium under Michigan common law. (Am. Compl. ¶ 4.) This motion arises from Plaintiffs' Count II, alleging associational discrimination under the ADA. Plaintiffs allege that Defendants terminated Plaintiff Matthew Schindewolf because of his relationship and association with his wife, who has a known disability, due to her medical expenses.  (Am. Compl. ¶ 47.) For the reasons stated below, Plaintiffs' motion for partial summary judgment is DENIED.

## I.   FACTS

The facts set forth in the opinion and order regarding Defendants' motion for summary judgement [ECF No. 53] are incorporated by reference herein. Plaintiff Matthew Schindewolf ("Plaintiff" or "Mr. Schindewolf") is a former employee of the Defendant City of Brighton (the "City"), where he began working as the Department of Public Services (DPS) Director in February 2001. (Am. Compl. ¶ 10; Schindewolf Dep. 36, Defs.' Mot. Summ. J. Ex. 1, ECF No. 53.) Mr. Schindewolf worked for the City of Brighton until July 23, 2013. ( Schindewolf Dep. 107.) Defendant Dana Foster is the City Manager.

Mr. Schindewolf's wife, Plaintiff Mary Schindewolf, has experienced abdominal pain since 2011. (Am. Compl. ¶ 12.) Plaintiffs filed numerous medical records under seal at docket no. 52 to support their motion for partial summary judgment. Without going into the medical details, subject to a stipulated protective order in this matter (ECF No. 50), the record shows that between May 2011 and January 2014, Plaintiff Mary Schindewolf underwent treatment and appointments including surgeries and procedures, in an attempt to pinpoint and treat the cause of her pain. (Am. Compl. ¶ 13; Pls.' Mot. Partial Summ. J. Exs. 1-21, ECF No. 52.) Between 2011 and 2013, Plaintiff Matthew Schindewolf requested and used intermitted FMLA leave to accompany his wife to medical procedures and appointments. (Am. Compl. ¶ 13(g).) Mr. Schindewolf testified that he applied for FMLA leave in November 2011 for potentially three weeks, for two weeks sometime after that, and again in May 2013. (Schindewolf Dep. 37-39, Ex. 1.) The FMLA forms show leave was requested in March 2012, May 2012 and October 2012 for Mr. Schindewolf to care for his

2

wife.[1] (Pls.' Resp. Ex. 13, filed under seal, ECF No. 60; *see also* Foster Dep. 60-67, Pls.' Mot. Partial Summ. J. Ex. 26.) Plaintiffs bring this motion seeking partial summary judgment that there is "no genuine issue of material fact that Defendants knew of the association between Matthew Schindewolf and his disabled wife, Mary Schindewolf." (Pls.' Mot. Partial Summ. J. 23.)

## II.   Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A moving party may meet that burden "by 'showing' – that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986).   Revised Rule 56 expressly provides that:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

---

[1] Mr. Schindewolf testified that he was granted FMLA leave three times. (Schindewolf Dep. 36, 81, ECF No. 53 Ex. 1.) Mr. Schindewolf testified that none of the requested leaves were ever denied. (*Id.* at 36.) Mr. Schindewolf testified that he first took leave in November 2011 to care for his wife, who was experiencing health issues. (Schindewolf Dep. 37-39.) The parties are not in agreement about how many leaves were taken, yet the parties agree that Plaintiff did not exceed the allowable leave time under FMLA.

Fed. R. Civ. P. 56(c)(1). The revised Rule also provides the consequences of failing to properly support or address a fact:

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
>
> (1) give an opportunity to properly support or address the fact;
>
> (2) consider the fact undisputed for purposes of the motion;
>
> (3) grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it; or
>
> (4) issue any other appropriate order.

Fed. R. Civ. P. 56(e). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

When the moving party has met its burden under rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Ultimately a district court must determine whether the record as a whole presents a genuine issue of material fact, *id.* at 587, drawing "all justifiable inferences in the light most favorable to the non-moving party." *Hager v. Pike Cnty. Bd. Of Educ.*, 286 F.3d 366, 370 (6th Cir. 2002).

## III.  Analysis

This motion arises from Plaintiffs' Count II, alleging associational discrimination under the ADA. The ADA precludes discrimination "because of the known disability of an individual with whom the qualified individual is known to have a relationship or association." 42 U.S.C. § 12112(b)(4). As Plaintiff points out, in order to establish a *prima face* case for associational discrimination, the employee must establish that:

4

(1) [H]e or she was qualified for the position; (2) he or she was subject to an adverse employment action; (3) he or she was known to have a relative with a disability; and (4) the adverse employment action occurred under a circumstance that raises a reasonable inference that the disability of the relative was a determining factor in the decision.

*Stansberry v. Air Wisconsin Airlines Corp.*, 651 F.3d 482, 487 (6th Cir. 2011) (Noting that the claim for associational discrimination "arises under an infrequently litigated section of the Act, which this Court has never addressed in a published opinion." *Id.* at 486.).

As to the first prong necessary to establish a prima facie case, there is neither argument nor evidence that Plaintiff was not qualified for his position. With respect to the requirement that the employee have been subject to an adverse action, Plaintiff tendered a resignation letter, which he argues was coerced. This issue of adverse action is addressed in full in the Court's opinion and order regarding Defendants' motion for summary judgment [53] and is not at issue herein.

Both parties agree that it is the third prong of this analysis that is at issue in Plaintiffs motion, that "the employee was known to be associated with a disabled individual." (Pls.' Mot. Partial Summ. J. 19; Defs.' Resp. 4-5.)  With respect to the third prong, Plaintiffs use much of their brief to argue that Plaintiff Mary Schindewolf meets the definition of "disabled" pursuant to the ADA. They contend that Mary Schindewolf "meets the threshold definition of 'disabled' as set forth in the ADA and Mary Schindewolf was known to be associated with Matthew Schindewolf." (Pls.' Mot. Partial Summ. J. 20.)

In their reply, Plaintiffs correctly point out that Defendants in their response did not dispute Plaintiff Mary Schindewolf's disability status. Defendants' response notes that "[a]ccording to Plaintiffs, Mrs. Schindewolf's condition substantially limits her ability to eat,

5

a major life activity as defined by the ADA," yet otherwise focuses on the issue of knowledge. (Defs.' Resp. 7.) Defendants argue that Plaintiff Matthew Schindewolf has failed to establish that Defendants were aware of his wife's disability and because the definitions under the FMLA are not synonymous with definitions of disability pursuant to the ADA, merely approving FMLA paperwork is not conclusive as to Defendants' knowledge of Plaintiff Mary Schindewolf's disability. (Defs.' Resp. 5.) Defendants argue that "Plaintiffs have not established that Defendants were aware that Mary Schindewolf was disabled" and therefore there exists a question of fact "as to the degree of Defendants' knowledge, which must be resolved in Defendants' favor." (Defs.' Resp. to Mot. Partial Summary J. 4.) Defendants argue that it is "erroneous to equate knowledge of a "serious health condition" under the FMLA with knowledge of a "disability'" under the ADA; the definitions are not synonymous. The issue then, turns on what Defendants knew about Plaintiff Mary Schindewolf's condition. The Court will, for purposes of this motion, treat Plaintiff Mary Schindewolf's impairment as a disability as defined under the ADA.

The FMLA entitles an eligible employee to take up to twelve workweeks of leave "during any 12-month period for one or more of the following: . . . . (C) In order to care for the spouse, or a son, daughter, or parent, of the employee, if such spouse, son, daughter, or parent has a *serious health condition*." 29 U.S.C. § 2612(a)(1)(C) (emphasis added). "The term 'serious health condition' means an illness, injury, impairment, or physical or mental condition that involves-- (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." 29 U.S.C. § 2611(11).

Under the ADA, "[t]he term 'disability' means, with respect to an individual-- (A) a physical or mental impairment that substantially limits one or more major life activities of such individual; . . . or (C) being regarded as having such an impairment . . . ." 42 U.S.C. § 12102(1). "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A). "[A] major life activity also includes the operation of a major bodily function, including but not limited to, functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions." 42 U.S.C. § 12102(2)(B). Plaintiffs argue that Mary Schindewolf meets the ADA definition of disabled based upon having a physical and/or mental impairment that substantially limits her ability to eat and drink. (Pls.' Mot. Partial Summary J. at 20.)

Defendants rely on caselaw noting this distinction between a "serious health condition" under the FMLA and "disability" under the ADA. "The ADA and the FMLA have divergent aims, operate in different ways, and offer disparate relief." *Hoge v. Honda of Am. Mfg., Inc.*, 384 F.3d 238, 249 (6th Cir. 2004) (citations omitted). "Unlike the FMLA, the finding of a disability is the key 'that unlocks the storehouse of statutory protections' under the ADA." *Id.*

The tenth circuit has stated that "[d]isability is a term of art under the ADA." *Berry v. T-Mobile USA, Inc.*, 490 F.3d 1211, 1219 (10th Cir. 2007) (citations and internal quotations omitted). In *Berry*, the plaintiff employee's claims included that her termination violated the

7

ADA. *Id.* at 1213. The plaintiff started her employment in October 2000 and was promoted in 2002. *Id.* at 1213-14. In October or November 2003, the plaintiff spoke with the general manager "about needing a rest at work due to extreme fatigue caused by multiple sclerosis (MS). [She] had been diagnosed with MS twelve years earlier and [the general manager] was aware she was receiving treatment for her condition." *Id.* at 1214-15. Further, the plaintiff was in Colorado and her primary treating physician, whom she saw annually, was in Dallas, Texas. *Id.* at 1213-15. The general manager advised that she would need to apply for FMLA leave in order to take time off. She filed her FMLA application, which was granted the day before her employer terminated her employment. *Id.* at 1215. The defendant argued that the decision to terminate had been made prior to the plaintiff making a request for FMLA leave. *Id.* at 1215.

On summary judgment, the district court found that while the plaintiff's MS was an impairment, the plaintiff failed to show that it "substantially affected her major life activities." As to the plaintiff's alternative argument, that the defendant "regarded her disabled as evidenced by its approval of her FMLA request," the tenth circuit noted that "[a]n employer's knowledge of an impairment alone is insufficient to establish the employer regarded the employee as disabled." *Id.* at 1219 (citing *Steele v. Thiokol Corp.*, 241 F.3d 1248, 1256 (10th Cir. 2001)). The tenth circuit also cited several cases that rejected the contention that an employer recommending disability insurance or FMLA leave establishes an ADA "regarded as" disabled claim. *Id.* at 1219 n.8. While these cases do not involve an associational discrimination claim, they offer some guidance as to what may constitute

8

"knowledge" that an individual is disabled. Simply applying for and using FMLA does not equate to a finding of or knowledge of disability pursuant to the ADA.

While some component of knowledge is necessary, in several cases this element was not at issue and the cases relied upon by Plaintiffs do not involve knowledge gained from FMLA paperwork. Plaintiffs rely on *Stansberry* to argue that "if the employer knows of the disease, and the disease qualifies as a disability, then this is sufficient for a prima facie case." (Pls.' Reply 5.) In *Stansberry*, a former airport director alleged that he was terminated because of his wife's disability, an autoimmune disorder, in violation of the ADA. *See Stansberry*, 651 F.3d at 482. The court held that the plaintiff "easily satisfies the second and third prong" of the associational discrimination framework, because his "termination is an adverse action and, assuming that his wife's condition renders her disabled, [the defendant] was aware of her disease." *Id.* at 487. Unlike the instant case, in *Stansberry,* there appeared to be no dispute that the defendant was "aware of [the wife's] illness for many years," despite the plaintiff's argument that the court "could infer that he was terminated on account of his wife's disability because he was discharged shortly after her condition worsened." *Id.* at 488.

The *Stansberry* court ultimately found that the record contained "extensive evidence" that the plaintiff was not performing his job to the defendant's satisfaction and that the plaintiff "had not come forward with enough evidence to establish a prima facie case of discrimination." The court held that the plaintiff failed to establish a *prima facie* case of discrimination and that the defendant "had legitimate, nondiscriminatory reasons for discharging him." *Id.* at 484. The court noted that "[a]lternatively, even if [the plaintiff] had

9

established a prima facie case, his poor performance is a legitimate non-discriminatory reason for [the defendant] to terminate him" and he had "offered nothing to show that this reason was pretextual." *Id.* at 488.

In *Copeland v. Mid-Michigan Reg'l Med. Ctr.*, 2012 WL 511534 (E.D. Mich. 2012), the awareness of the disability was a conceded fact of the case. *Id.* at *5 ("All of the decision-makers were aware that Schuell had terminal brain cancer and of Plaintiff's relationship with Schuell."). In *Gaglioti v. Levin Grp., Inc.*, 508 Fed. Appx. 476 (6th Cir. 2012), which addressed an associational discrimination claim, the court concluded that "taking the facts in the light most favorable to [the plaintiff], there is enough evidence in the record to find that the key . . . decision-makers were aware of the condition of [the plaintiff's] wife." *Id.* at 484. The opinion cites evidence including the plaintiff's argument that one of the decision-makers "saw that [the plaintiff's] wife was disabled at the initial meeting at the cocktail party that led to the job offer," that the plaintiff "spoke to [one of the decision-makers] informally on numerous occasions about his wife's medical problems," and that "it is undisputed that [the plaintiff] submitted two medical insurance forms to [the defendant]-- once at his initial hiring, and once in July 2009," despite the decision-makers testimony that they never saw the forms. *Id.* at 478, 484. The medical insurance forms "disclosed information relating to [the plaintiff's] wife's medical condition." *Id.* at 478. Despite the court's conclusion that there was enough evidence from which to conclude that the defendant's decision-makers were aware of the plaintiff's wife's condition, the plaintiff was unable to meet the fourth prong of the test, and failed to show evidence beyond his own allegations to "support an inference that [his] termination was related to his wife's disability." *Id.* at 484.

Plaintiffs point out that in other ADA discrimination cases, courts have found that actual or constructive knowledge will suffice to establish the knowledge prong of a prima facie case. Plaintiff relies on *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, (6th Cir. 1996), for the premise that to establish a prima facie case, the plaintiff must show "the employer knew or had reason to know of his of her disability." *Id.* at 1185 (abrogated on other grounds) ("[a]t least two courts have held that a plaintiff must show that his or her employer had 'actual or constructive' knowledge of the disability as part of a *prima facie* [ADA] claim. This Circuit has also reached this conclusion in a similar context in a Rehabilitation Act case." *Id.* at 1187 n.13); *see also Moloney v. Home Depot U.S.A.*, No. 11-10924, 2013 WL 460684 (E.D. Mich. Feb. 7, 2013) ("The Court agrees that it is Stevens's knowledge, as the decision-maker, that is relevant. Whether Stevens knew or should have known of Plaintiff's disability, however, is not incontrovertible simply because Stevens testified that he did not know Plaintiff was disabled. . . . Plaintiff has identified sufficient evidence in the record to create a genuine issue of fact as to whether Stevens knew *or should have known* that Plaintiff was disabled."); *cf. Milholland v. Sumner County Bd. of Educ.*, 569 F.3d 562 (6th Cir. 2009) (finding no knowledge of disability where employer was not aware the employee's condition substantially interfered with a major life activity; "[t]he facts, construed in the light most favorable to Milholland . . . support a finding only that the defendants generally knew that Milholland was ill, but not that they regarded her as impaired.").

Plaintiff argues that Defendant Foster had constructive knowledge, even if he claims that he lacked actual knowledge. Plaintiff notes that "for purposes of this motion, Plaintiffs

11

will not dispute whether Foster had actual knowledge." (Pls.' Reply 6.) Plaintiff relies on an FMLA form dated March 2012 and signed by Foster. (Pls.' Mot. Summ. J. Ex. 27.) Plaintiffs allege that the statements on the document include that Plaintiff Mary Schindewolf was "unable to care for herself" and experiences "chronic . . . abdominal pain."  Statements on a May 2012 FMLA form contained similar statements about treatment for chronic pain and that she could not "participat[e] in normal daily activities." (Pls.' Resp. to Mot. Summ. J. Ex. 13, sealed ECF No. 60.) From this, Plaintiffs argue that Defendant Foster knew Plaintiff Mary Schindewolf suffered from chronic pain, could not care for herself or participate in normal activities, had suffered substantial weight loss and had not gained the weight back and this, coupled with Defendant Foster's admission that he knew she had suffered significant weight loss, was sufficient to give him "reason to know" that she was substantially limited in caring for herself and eating.[2] (Pls.' Reply 7.)

Defendant Foster admitted that he was aware that Plaintiff Mary Schindewolf was ill:

> Q: At some point in time did you become aware that Mary Schindewolf was ill?
>
> A: Yes, by way of Mr. Schindewolf communicating that to me.
>
> Q: When was that, if you recall?

---

[2]Despite Plaintiffs having filed the Motion and Exhibits, Reply and Exhibit 13 under seal, the general nature of the statements relied upon in this opinion and order appear in Plaintiffs' First Amended Complaint, which was not filed under seal, for example "she has experienced chronic pain in her pelvis and abdomen" and "[d]ue to her chronic pain [she] is substantially limited in one or more major life activities, including, but not limited to, eating . . . ." and including a list of medical procedures and dates. (Am. Compl. ¶¶ 12, 13, 14.)

> A: I'm recalling that it was either in the early to mid part of 2012. That's what
> I'm recalling right now. I can't - I don't have a precise date.

(Foster Dep. 56, Pls.' Mot. Partial Summ. J. Ex. 26)

Yet there is other evidence that raises a question of fact about the extent to which

Defendant Foster knew Plaintiff Mary Schindewolf was disabled or impaired. Defendants

also provide an affidavit in which Defendant Foster attests to the following:

> 2. In early to the mid-part of 2012, Matthew Schindewolf communicated to me
> that his wife, Mary Schindewolf, was having complications from a prior
> [operation].
>
> 3. He indicated to me that one of the complications was that she had lost a
> significant amount of weight and was not gaining it back.
>
> 4. Matthew Schindewolf never told me that his wife was having difficulty eating,
> doing housework or working outside the home.
>
> 5. I was not aware that Mary Schindewolf was experiencing limitations in
> performing those activities or any other activities prior to July 23, 2013.

(Foster Aff., Defs.' Resp. Ex. 1.)

Reading the FMLA forms which Plaintiffs submitted under seal as docket no. 57, and

upon which they rely to establish Defendant Foster's knowledge, the forms themselves are

limited to FMLA requirements and definitions, not ADA. On one of the forms, Plaintiffs'

doctor indicated that the condition was "yet undiagnosed." The "problem duration" was

stated as "time period indeterminate, multiple days or weeks for out of state and in state

medical appts." (Pls.' Resp. to Mot. Summ. J., Exhibit 13, filed under seal ECF No. 60.)

Unlike those cases where there was knowledge of a specific diagnosis, in the forms at

13

issue there were indications that the problem was "chronic" or she was "unable to care for herself," yet there were also several indications that there was really no diagnosis yet, time periods were indeterminate, treatment was as yet not decided. (*Id.*) FMLA forms completed by Plaintiff Matthew Schindewolf were similarly indeterminate, only generally referencing tests, procedures, and post-operative conditions. For leave from "3/20/2012 thru 2012," the "care needed by the patient" was described by Mr. Schindewolf as "transport and some medical assistance during/after procedures." (*Id.*) The forms do not contain reference to problems with eating, digestion, weight loss or a diagnosis. In their Supplemental Response to Plaintiffs' Requests for Admissions No. 5, Defendants admit that Mary Schindewolf was granted FMLA leave "upon certification from Ms. Schindewolf's doctor that she had a serious health condition requiring inpatient hospitalization and/or continuing treatment by a medical provider during those periods." (Pls.' Mot. Partial Summ. J. Ex. 29.)  This statement merely references the FMLA standards and does not establish that Plaintiff Matthew Schindewolf "was known to have a relative with a disability" pursuant to the ADA, nor does it establish knowledge of an illness or impairment from which constructive knowledge of disability can be deduced.

As set forth in the cases above, knowledge of an illness, or a request for FMLA leave does not equate with knowledge of a disability, or, rather, knowledge that a condition substantially interferes with a major life activity. As distinguished from those cases in which a diagnosis is part of the analysis, here, as Plaintiffs themselves point out, Plaintiff Mary Schindewolf remained undiagnosed and the information on the FMLA forms was of an indeterminate nature.

In considering the evidence in the light most favorable to Defendants, the non-moving parties, Plaintiffs have failed to show that there is no genuine issue of fact as to the third prong of the associational discrimination framework.

**IV.   Conclusion**

For the above stated reasons, Plaintiffs' motion for partial summary judgment [52] is DENIED.

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated:  May 29, 2015

I hereby certify that a copy of the foregoing document was served upon counsel of record on May 29, 2015, by electronic and/or ordinary mail.

s/Johnetta M. Curry-Wiliams
Case Manager